## WABASH RAILROAD COMPANY
### v.
## H. C. SMITH.

*Railroads—Negligence—Fire—Injury to Orchard—Witnesses.*

1. It being established that a given fire originated from an engine of a company named, a case of *prima facie* negligence is made out, which, if not overcome by proof on the part of the company, will entitle the plaintiff to the judgment obtained by him.

2. Where the evidence in a given case is sharply conflicting, in the absence of passion and prejudice, the jury must be regarded as the sole judges of the credibility of the different witnesses, and of the weight of the evidence when all considered together.

3. The fact that fire and sparks did escape from a given engine will of itself justify the assumption that appliances for the prevention of the escape thereof were defective.

4. The verdict of a jury will not be set aside where there is a contrariety of evidence, and the facts and circumstances by a fair and reasonable intendment will authorize a verdict, even if it should appear to be against the weight of the testimony.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Champaign County; the Hon. J. F. HUGHES, Judge, presiding.

Mr. GEORGE B. BURNETT, for appellant.

Messrs. W. A. PERKINS and FRANCIS M. WRIGHT, for appellee.

BOGGS, J. Appellee brought this action on the case to recover for damages occasioned to his orchard by fire, which he claims was communicated thereto by escaping fire and sparks from locomotive engines of the appellant. Upon a hearing before the court and a jury a verdict was rendered awarding appellee damages in the sum of $800. A new trial being refused by the court, judgment therefor was rendered against appellant, to reverse which this appeal is prosecuted.

Two reasons only are relied upon for reversal: First, that there is no proof in the record that the fires in question were communicated from appellant's engines, and hence the statutory presumption of negligence does not arise; second, assuming that, upon the evidence offered, the jury might infer that the fires were communicated from appellant's engines, the presumption of negligence was fully and conclusively rebutted by the evidence offered by appellant. On the first of these grounds there can be no serious question in this court. We have carefully examined the evidence bearing thereupon, and find it sufficient to authorize the jury to find that the fire so originated.

A recitation of the facts and circumstances proven, which in our opinion justified the jury in so finding, would serve only to extend this opinion without compensating benefit to the litigants or the profession.

The appellee, having established the fact that the fire originated from the engines, thereby made out a case of *prima facie* negligence, which if not overcome by proof on the part of appellant entitled him to the judgment awarded him by the court. The facts which will overcome and rebut this *prima facie* case are perhaps as well and fully stated in I. B. & W. Ry.

Co. v. Craig, 14 Ill. App. 407, as elsewhere, and counsel for appellant adopts that statement as the correct exposition of the law, copies it into his brief, and asserts that the proof in the case at bar establishes the existence of such recited facts. It is as follows:

"Assuming that the fire was caused by sparks from the locomotive, this made out a *prima facie* case under the statute entitling appellee to recover, unless the same was rebutted by proof of appellant. This it has successfully done, by proof showing that the smoke stack was supplied with the best appliances for arresting sparks in use or known to the profession of locomotive engineers; that it was examined in the shops of the company by a skilled boiler-maker on the day before and the day after the accident, and found to be in good condition and safe. The engineer in charge of the locomotive at the time of the accident was experienced and competent, and properly performed his duty, and the *engine, smoke stack and spark arrester*, were all safe and in good order, *and the grade nearly level, requiring no extra speed.*"

If these facts are proven, it is clear that the presumption of negligence arising from the mere fact that the fire was occasioned by the passing train was fully rebutted and the appellant ought to have prevailed. We can not say, however, that the grade of appellant's road passing through the orchard of appellee where the fire was communicated was an "easy grade, nearly level, and requiring no extra speed."

The plaintiff testified it was an up-grade of sixty feet to the mile; that engines had to put on full steam to surmount it if the train was heavy; that freight trains were frequently cut in two there, and taken in parts over the grade; and that the engines threw out sparks like hail while going up the grade.

Peter Jones, a witness for appellee, stated there was a considerable grade there; that more force was required for an engine to pass the orchard, and that during the same month of August in which the damage to the orchard was done by fire, he frequently saw sparks flying from the engines when passing through the orchard. Alonzo Smith, another witness, said

the grade was higher then east or west of that point; that the engines did a great deal of puffing in getting up the grade; that he had seen fire and cinders falling from the engine there. Susan Dick testified that the trains stalled on the grade there several times that summer; had to be cut in two and part taken over at a time; that sparks flew from the engine as they went up the grade in the orchard.

Mrs. Norton, another witness, had seen freight trains nearly stopped when going up the grade, which she said was steep in the orchard. August Brooghtener, a witness for appellee, saw engines stall there and the trains cut in two and taken over in parts that same summer.

Harry Dick saw the trains stall there, saw them cut in two and taken over in parts a number of times that summer. He saw the freight train pass along there the time of the fire on August 5th, and says that the engine was exhausting, and going fast.

Herringer, Ryan, Vane and Clark, appellant's locomotive engineers, and Vanderhook, its civil engineer, testified in substance that the grade is only an ordinary one and they had no trouble in getting over it, not hard pulling for an engine to get over it, etc., etc.

All these witnesses were seen and heard by the jury, and it was for the jury to give weight and effect to the testimony of each and all of them.

The evidence was conflicting, sharply so, and the jury being, so far as we can see, free from passion or prejudice, must be regarded as the sole judges of the credibility of the different witnesses and of the weight of the evidence when all considered together. It is to be also remembered that the burden of producing a preponderance of evidence upon this point is cast by law upon the appellant. In the case of C. & A. R. R. Co. v. Quaintance, 58 Ill. 389, cited to us with approval by appellant, it is said: "The evidence shows the grade was steep and difficult of ascent. It requires much more steam than is ordinarily used to get the train over the grade at that point. The more steam that is used the greater will be the exhaust, and consequently a greater volume of sparks will be thrown

Wabash R. R. Co. v. Smith.

out and with much greater force." The same facts may have been found by the jury to have been proven in this case, and from such facts they might properly have deduced the same conclusions.

Nor can it be said that the jury necessarily should have found from the evidence that the appliances for arresting sparks had been examined on the days in question and found in good condition and safe.

The jury were fully convinced that fire or sparks did escape from the engines to the orchard and this fact of itself would tend to induce a belief that there might be some defect in the appliances so ingeniously contrived and said to be so effective in preventing sparks or fire from passing from the engine. This belief was, no doubt, strengthened by the statement of John Ryan, one of appellant's engineers, who testified that he should think there was something wrong with an engine if it threw fire fifty feet, which was the distance from the track to the orchard.

Further, the proof as to the inspection of the engines was largely of records made by the inspectors and in some respects not calculated to strongly impress the mind of the jury. For instance, the following portion of the testimony of Inspector Davis:

Q. Look at your record as to engine No. 386.

A. I have it. * * * It was in the morning when I inspected it. * * * It was in first class condition.

Q. What do you know about engine 486 on August 5?

A. That is all right.

Q. Did you examine it?

A. Yes, sir.

Q. To same extent as the others?

A. Yes, sir.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. You may tell the jury whether these records were made at the time when these engines came in.

A. Yes, sir.

Q. And made by you?

A. Yes, sir.

Q.   And that is your record?

A.   Yes, sir.

Cross-examination :

Q.   How does it come that D. J. Putts' name is signed to this report?

A.   He is night inspector.  I inspect all engines that come in there and he puts them down.

Q.   Did you inspect engine 486, or Putts? that is Putts' work, ain't it?

A.   Yes.

Q.   Look at 368; that is same thing, ain't it?

A.   He is working under me.

Q.   You are not there when he is on duty?

A.   No, sir, I am not.

The jury believed that the appliances for arresting sparks and fire were effective for that purpose if kept in good order. They knew that fire and sparks did escape in great quantities from the engines, and the conclusion that the spark arresters were not in good order, naturally and logically followed. We could not say that conclusion, thus reached, should have been overcome by the testimony of the inspectors and the records they produced, which, as has been seen, were not altogether satisfactory and convincing, to say the least.

It is conceded by appellant that the instructions of the court stated the law of the case correctly to the jury, and the only ground upon which we are asked to reverse the judgment is that the verdict of the jury was contrary to the evidence. In the case of I. C. R. R. Co. v. Gillis, 68 Ill. 317, it is said that " If any rule of court can be said to be so well established as to be neither questioned, nor require the citation of authority to support it, it is that a verdict of a jury will not be set aside where there is a contrariety of evidence, and the facts and circumstances by a fair and reasonable intendment will authorize a verdict, even if it should appear to be against the weight of the testimony."

We think this case was fairly and impartially tried and that the facts and circumstances proven were sufficient to authorize the jury in coming to the conclusion that they did. Therefore the judgment is affirmed.      *Judgment affirmed.*