# John W. Davis v. Stephen A. Hamilton.

1. APPEALS—*Forcible Entry and Detainer.*—Sec. 18, Ch. 57 R. S., entitled, "Forcible Entry and Detainer," providing that in cases of appeal the bond must be filed within five days from the rendition of the judgment, applies only to appeals from judgments rendered on the original trial, whether in a court of record or before a justice of the peace, and not to appeals from the Circuit Court where the case is tried in that court on appeal from a justice of the peace.

2. FORCIBLE DETAINER—*Jurisdiction of the Circuit Court.*—Circuit Courts have both original and appellate jurisdiction of actions of forcible detainer.

3. BOUNDARY LINES—*Location.*—The location of a boundary line is a question of fact for the jury.

4. JUDGMENTS AND DECREES—*Collateral Attack.*—The return. of a person as special deputy in a foreclosure proceeding, purporting to have been appointed under the statute to serve the summons, showed the service and was sworn to by such person as special deputy; the instrument preceding the return was duly signed by the officer, but the blank space for the insertion of the name of the special deputy was left unfilled, no appointee being named therein. A decree was nevertheless rendered, the premises sold, and in default of redemption, conveyed to the mortgagee, who in turn conveyed them to appellee. The premises being in the possession of appellant, who was not a party to the foreclosure, but was a privy in estate to the assignee of the original mortgagors (they having become insolvent after the execution of the mortgage), an action of forcible detainer was brought under Sec. 2, Ch. 57, R. S., by appellee, claiming possession under the decree in the foreclosure suit. *It was held* that the service upon the mortgagors was insufficient; that the decree was rendered without jurisdiction and might be attacked by the defendants in the forcible detainer suit.

5. SERVICE OF PROCESS—*Recitals of the Decrees.*—Where the recitals of a decree are that the proper service upon the parties has been had, and the proofs show conclusively that such service has not been had, the recitals of the decree will not overcome the proofs.

6. SERVICE OF PROCESS—*Appointment of Special Deputy.*—The appointment of a special deputy to serve process can only be made by a writing indorsed on the process in substance as prescribed by R. S., Ch. 125, Sec. 10.

7. JUDGMENT IN BAR—*Requisites of.*—To operate as a complete or partial bar, the prior judgment must be between the same parties standing in the same capacity, or else between their privies.

8. FORECLOSURE PROCEEDINGS—*Determination of Rights in.*—The determination of rights as between adverse legal claims is not proper in a foreclosure suit. This rule applies where the muniments of title of

the adverse claimants, respectively, describe or include the identical premises in controversy.

Memorandum. — Forcible detainer.    Appeal from Justice's Court; appeal to this court from the Circuit Court of Scott County; the Hon. CYRUS EPLER, Judge, presiding.    Heard in this court at the May term, 1893.    Reversed and remanded.    Opinion filed October 28, 1893.

The statement of facts is contained in the opinion of the court.

### APPELLANT'S BRIEF, JAMES M. RIGGS, ATTORNEY.

In order to make a matter *res judicata*, there must be a concurrence of (1) identity in the subject-matter; (2) of the cause of action; (3) of the persons and parties ; (4) identity of the quality in the persons for or against whom the claim is made.    Benz v. Hines, 3 Kan. 390; 89 Am. Dec. 597; Atchison, T. & S. F. R. R. Co. v. Commissioners, etc., 12 Kan. 136; Freeman on Judgments (2d Ed.), Sec. 156; Bigelow on Estoppel (2d Ed.), 65; Herman on Estoppel, Sec. 94; Wells on Res Adjudicata, Sec. 21; Marshall v. Rough, 2 Bibb (Ky.) 628; Crenshaw v. Creek, 52 Mo. 101; Jones v. Blake, 2 Hill Ch. (S. Car.) 629; Rathbone v. Hooney, 58 N. Y. 467; Stoops v. Woods, 45 Cal. 439; Building and Loan Association v. Chalmers, 75 Cal. 332; Brooking v. Dearmond, 27 Geo. 58; Davis v. Davis, 30 Geo. 296; West v. Creditors, 3 La. Ann. 529; Cook v. Doremus, 10 La. An. 679; Blakey v. Newby's Adm'rs, 6 Munf. 64; Lander v. Arno, 65 Me. 26; Lord v. Wilcox, 99 Ind. 491.

### APPELLEE'S BRIEF, JAMES CALLANS AND JAMES A. WARREN, ATTORNEYS.

As to the proceedings on foreclosure, they having been conducted in a court of general jurisdiction, the intendment must be, they were regular and in conformity with the law. Schaper et al. v. Schaper, 84 Ill. 603; 19 Brad. 652.

Every reasonable presumption will be indulged in favor of the action of a court of general jurisdiction.    Magill v. Brown, 98 Ill. 235; Rockwell et al. v. Jones, 21 Ill. 279.

" When any judicial or official act is shown to have been

done in a manner substantially regular, the burden of proof
is on those who deny that the formal requisites to its valid-
ity have been complied with. " 19 Am. and Eng. Ency. of
L., 49.

" The rule in equity, as at law, is that, in the absence of
all the testimony upon which the lower court acted, it will
be presumed that everything was established which could
have been proved under the pleadings by any reasonable
intendment." Smith v. Fletcher (Ark.), 11 S. W. Rep. 824.

" A court of general jurisdiction proceeding within the
general scope of its powers is presumed in *a collateral pro-
ceeding*, to have had jurisdiction in the cause until the
contrary appears." 12 Am. and Eng. Encl., 271.

"Every reasonable presumption will be indulged in favor
of the jurisdiction of a court of general jurisdiction, and its
finding in the decree defendants were " duly summoned "
will be held to be *prima facie* evidence of the existence of
that jurisdictional fact. " Turner v. Jenkins, 79 Ill. 231.


MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE
COURT.

This action of forcible detainer was commenced by ap-
pellee, August 31, 1891, before a justice of the peace. On
the trial in the Circuit Court, upon appeal, the verdict was
for the plaintiff, which the court sustained, and from the
judgment thereon a further appeal was taken to this court.

Appellee has interposed a motion to dismiss this appeal
for the reason alleged, that the bond was not filed in apt
time. It appears from the record that the judgment was
rendered May 7, 1892; that the appeal prayed was allowed
upon bond to be filed and bill of exception signed within
ninety days, " by consent; " and that the bond was filed May
28, 1892.

The statute provides that the proceedings may be com-
menced in any court of record, or before any justice of the
peace in the county where the premises in controversy are
situated (R. S., Ch. 57, Sec. 5), and that " if any party shall
feel aggrieved by the verdict of the jury, or the decision of
the court, upon any trial had under this act, such party may

Davis v. Hamilton.

have an appeal, to be taken to the same courts, in the same manner, and tried in the same way as appeals are taken and tried in other cases; *provided*, the appeal is prayed and bond is filed within five days from the rendition of the judgment, and no writ of restitution shall be issued in any case until the expiration of said five days." (Sec. 18.)

In support of the motion, it is suggested that this provision applies to all judgments upon trials had under this act; that compliance with it is an indispensable condition of the right of appeal; that it is absolutely imperative, and its strictness not to be relaxed in the discretion of the court, nor by consent of the adverse party.

The first four sections of the statute define the cases in which this action will lie, prescribe the form and proof of demand, where demand is necessary, and declare the right to growing crops in one of the cases defined; those next following to the eighteenth prescribe the proceedings in the action from the complaint, to and including the judgment on the trial had in the court in which it shall have been commenced; and then, by section 18, provision is made for an appeal as above quoted. We therefore hold that this provision was intended to apply only to appeals from such judgments, that is, judgments rendered on the original trial, whether in a court of record or before a justice of the peace. Of this action Circuit Courts have both original and appellate jurisdiction. This case was commenced before a justice of the peace. The bond given on appeal from his judgment was filed within five days from its rendition; whereby the plaintiff, in our opinion, obtained all that the statute intended, in the security thus promptly furnished, for whatever rent, damages and costs should accrue, or be occasioned to him by its wrongful suspension.

The trial in the Circuit Court was had on the appeal so taken. The provision in question did not provide for a further appeal. It was fully satisfied by the bond filed, and the right of further appeal was given, conditioned and regulated by another, which in this case was also complied with. The motion to dismiss is therefore overruled.

The land in controversy is a strip along, upon or near the boundary line between the southeast and southwest quarters of the northeast quarter of Sec. 3, T. 13 N., R. 13, in Scott county, described in the complaint as beginning at the northwest corner of said southeast quarter; thence east to the public road; thence south on the west line of the public road about forty rods to the fence running east and west on the south side of the land now occupied by the above named defendants; thence west on the line of said fence to the west line of said southeast quarter; thence north on said west line to the place of beginning. Appellee, claiming the east forty, contended that its west line was west of the public road, six or seven rods at the north end and five or six at the south; that the fence had been twice moved east, first in its whole length, and afterward for a short distance at its north end, following a slight turn in the road. Appellant was tenant of the west forty, claiming and in possession, to the fence on the west line of the road.

Thus the main question of fact in the case was upon the location of the boundary line between these forties, upon which and others, also material, the evidence was very conflicting. We refrain from its discussion, because, in our opinion, whatever should be the finding upon these questions, the law arising upon the facts that are undisputed requires that the judgment below should be reversed.

These are as follows: Prior and up to some time in 1877 or 1878, not definitely shown, the east forty was owned by John Moses and the west by James B. Young. They were partners in a banking business. Failing therein in one or the other of those years they made an assignment for the benefit of their creditors, which included with the firm assets their individual rights in those tracts respectively. In 1878 or 1879 and probably at different times, but neither of which is definitely shown, William Milhous, the assignee, as such, sold the east forty to Charles K. Moses, and the west to A. A. Wheelock. Under foreclosure proceedings against Wheelock, the latter was afterward sold to Isaac McLaughlin. He assigned his certificate of purchase to

Samuel Templin, to whom the master made the deed. Mc-Laughlin then leased it of Templin and sublet to appellant, who was in possession when this suit was commenced. Previous to said assignment John Moses and wife had mortgaged the east forty with other land to the Northwestern Mutual Life Insurance Company. In December, 1878, the company filed its bill to foreclose said mortgage in the Circuit Court of the United States for the Southern District of Illinois, making parties defendant, besides the mortgagors, divers others, including Milhous, upon the sole averment as to them that "your orator is informed that the following persons claim some interest in said premises, to wit, William Milhous" and others named. The process on this bill and the returns thereof introduced in evidence by the appellee showed service on different defendants by different persons who signed and verified the returns, respectively, as "special deputy" marshals. Two of them were preceded by formal written appointments of the persons who made the service, naming them, signed by the marshal; but the return of service upon John Moses, Sallie M. Moses, his wife, and William Milhous, was signed and sworn to by John M. Howard as special deputy, and preceded by a writing in all respects like the appointments referred to, except that no appointee was named therein, the space for such name being left unfilled. This was all the evidence offered to show service upon them. Nor was there any proof that they appeared in any form or by any means which would give the court jurisdiction of their persons. A decree was nevertheless rendered against them in the usual form at the January term, and filed February 4, 1879, in pursuance of which the master on the 12th of March following sold, and on June 24, 1880, in default of redemption, conveyed the mortgaged premises to the insurance company, which, by its deed of July 30, 1889, conveyed the said east forty to appellee.

He claims the right to maintain this action only under the sixth clause of Sec. 2, of the act in regard to forcible entry and detainer (R. S., Ch. 57), which allows it " when lands or

tenements have been  *  *  *  sold under the judgment or
decree of any court in this State  *  *  *  and the  *  *  *
party to such judgment or decree  *  *  *  after the ex-
piration of the time of redemption  *  *  *  refuses or
neglects to surrender possession thereof, after demand in
writing by the person entitled thereto, or his agent."

Appellant was not a party to the decree relied on, but is
privy in estate to Milhous, who is claimed to have been a
party and to have conveyed *pendente lite*. This latter claim
is denied, and the evidence leaves it at least doubtful. But
perhaps the finding of the jury on that question should be
held conclusive. We do not think it material, however, and
therefore express no opinion as to the fact or the weight of
the evidence relating to it. If Milhous had not conveyed
and was still in possession when the foreclosure suit was
commenced, and was a party to it, we agree that all persons
thereafter acquiring possession under him, immediately or
mediately, would be bound by the decree to the same extent
that he was, though not themselves made parties to it. Ap-
pellant was so in possession and did so refuse to surrender
it. If, therefore, the foreclosure proceedings were binding
upon Milhous as assignee of Moses, they were equally so
upon him.

But appellee was bound to bring his case, by competent
evidence, fairly within the statute, to show that the mas-
ter's sale was authorized by a decree that was valid against
Moses, the mortgagor, and Milhous, the subsequent incum-
brancer, as assignee, and that by virtue of the deeds from
the master and the insurance company, he was lawfully
entitled to the possession when he made demand therefor.

The record of the proceedings mentioned in the foreclos-
ure suit was admitted in evidence over appellant's objec-
tion, which was really based upon the want of proof that
the court had jurisdiction over the persons of Moses, his
wife, and Milhous. But as stated, it was general only, and
is therefore claimed to have raised only the question of its
relevancy.

This is true where it is presumable, consistently with

what has been admitted and is offered, that there was other available evidence which would supply the defect if it were specifically stated as the ground of the objection. Weber v. Mick, 131 Ill. 530, and other familiar cases.

The evidence in question on its face failed to show or raise the presumption that the court had such jurisdiction—that they had been served by any officer or person duly authorized or had in any way appeared; and no other was offered. Without such jurisdiction shown or fairly presumed, the decree and all the proceedings ·thereunder were absolutely void as to them and those claiming under them, and may be impeached collaterally as well as directly, wherever those proceedings are sought to be used against them. Thompson v. Whitman, 18 Wall. (U. S.) 457; Williamson v. Berry, 8 How. (U. S.) 542; Elliott v. Piersoll, 1 Peters, 540. That such is the rule in Illinois see the cases cited in Baldwin v. Freydendall, 10 App. on pp. 111, 112.

Can it be reasonably presumed that Howard had any other than the defective authority shown for serving the process? or that any other process than that shown to have been served was issued against those defendants?

It is said that by the rules of practice for the equity courts of the United States it is provided that the clerk's office shall be open and the clerk in attendance on the first Monday of every month for the purpose of receiving, entering, entertaining and disposing of all motions, rules, orders and other proceedings which are grantable, of course, and applied for; that any judge of a Circuit Court, as well in vacation as in term, in chambers or on the rule days at the clerk's office, may make and direct all such interlocutory orders, rules and other proceedings preparatory to the hearing of all causes upon their merits, in the same manner and with the same effect as the court could make and direct the same in term; that the service of all process, mesne and final, shall be by the marshal of the district or his deputy, or by some other person specially appointed by the court for that purpose, and not otherwise; that in drawing up decrees and orders, neither the pleadings nor any part thereof, nor the

master's report nor any other prior proceeding shall be re-
cited or stated, but it shall begin in substance as follows:
"This cause came on to be heard at this term, and was
argued by counsel, and thereupon, on consideration thereof,
it was ordered, adjudged and decreed as follows:" as was
done in this case. And it is urged that in view of these
rules the presumption as to a court of such general jurisdic-
tion would be that its decrees and proceedings were regular
and in conformity with the law, and therefore, in this case,
that the defendants referred to were served with process by
some person specially appointed by the court, at chambers
or on a rule day at the clerk's office, for that purpose.

However it might have been had the plaintiff introduced
the decree alone, though it did not recite or state that they
had been duly served, or that the court had jurisdiction of
their persons, the question here is whether such a presump-
tion may be reasonably indulged as not inconsistent with
the accompanying evidence offered by him. That included
a writ of summons in the case and against those defendants,
with the return thereof. The only conceivable object of
their introduction was to show jurisdiction of the persons
by due service of process, which for that purpose must have
been made by an officer duly authorized, and in apt time
for the decree rendered. The summons was dated Decem-
ber 21, 1878, and returnable on the first Monday of Febru-
ary, 1879, the regular rule day for that month. Its return
shows service upon Milhous on January 10th, and on John
Moses and Sallie M. Moses on January 11, 1879. The writ
was returned February 3d, and the decree filed February
4th, the day on which it was returnable.

In Turner v. Jenkins, 79 Ill. 228, the only case cited for
appellee upon this point, the process shown was returnable
to the September term. The service on defendant was
confessedly defective. But no step was taken in the cause
at that term except to continue it to the next, at which a
decree was rendered. The defect in the service was not
only a sufficient but an imperative reason for the continu-
ance, and no other appearing, the presumption would be that

it was continued for that reason; and having been continued for want of jurisdiction of the person, the court would be all the less likely to render a decree at the next term without seeing that it had been in the mean time obtained. And hence the Supreme Court might well say, as it did, in view of the fact that the decree found due service though the record contained no evidence of an *alias* summons issued and duly served, "*non constat*, but a summons may have been issued to the October term, duly served on defendants and lost from the files." This case is essentially different in principle, in that here the service was made and sworn to by Howard—not as a general deputy nor as an appointee of the court, for in such case it needed no such verification—but as a special deputy under the defective appointment shown, after the only rule day (for January) intervening between the date and return day of the process, and returned only one day before such return day, when the decree was filed. If an appointment had been made by the court or judge before the date of its service, either on the January rule day or at chambers, it is highly unreasonable to presume it would have been served and returned under the preceding defective appointment as special deputy. And accordingly, in Hemmer v. Wolfer, 124 Ill. pp. 438, *et seq.*, the Supreme Court, while affirming the rule declared in Turner v. Jenkins, expressly decide that where a decree is rendered at the return term of a writ, the service of which is insufficient to give the court jurisdiction, not even a recital in it of proper service will overcome the proof that the only service made was that shown by the defective return.

We think this conclusive against any presumption that any other appointment was made or writ issued.

If it may be assumed, notwithstanding the rule referred to, declaring by whom, exclusively, process must be served, that, following the law and practice of the State courts, the marshal could appoint a special deputy to serve it, he could make it only by a writing indorsed thereon in substance, as prescribed by R. S., Ch. 125, Sec. 10. Ill. Land & Loan Co. v. McCormick, 61 Ill. 322. The attempted service being

thus substantially defective, the court thereby acquired no jurisdiction of the persons of these defendants. Filkins v. O'Sullivan, 79 Ill. 525; Noleman v. Weil, 72 Ill. 502. And there being no room for a reasonable presumption that the defect might have been supplied if it had been specifically pointed out, the general objection to the evidence offered was sufficient.

We are therefore constrained to hold that should all the other questions involved, whether of law or of fact, be decided in his favor, upon this evidence or want of evidence affecting the validity of the decree in the foreclosure case and sale thereunder, the judgment for appellee must be reversed. He has failed to bring his case within the provision of the statute upon which he relied.

Appellant makes the further point that even if Howard was duly empowered to serve the writ in the foreclosure suit, the decree did not affect Milhous in his capacity as assignee, for two reasons: first, that the bill did not make him a party in that capacity, and second, that, his claim being independent of and adverse to that of John Moses, the mortgagor, and of the insurance company, the mortgagee and complainant, the question of his right could not be adjudicated in the foreclosure suit, and therefore the record of the proceedings therein was not competent evidence against appellant, who claimed only under him.

To the legal propositions upon which these alleged reasons rest, we fully assent. In Thorp v. King, 42 Ill. App. 527, we held that " to create a complete or partial bar the prior judgment must be between the same parties, standing in the same capacity, or else between their privies." Citing Wells on Res Adjudicata, Sec. 15; William Milhous and William Milhous, executor or trustee, would represent interests in the subject-matter entirely different and distinct, and in contemplation of such proceedings be distinct parties. Had the bill charged him as executor, for example, and not otherwise, it would not be contended that a proper decree *pro confesso* thereon would affect any interest he might have in his own right. The rule appears to be abundantly sus-

tained by authority. Packet Co. v. Sickles, 24 How. (U. S.) 333; Landon v. Townsend, 112 N. Y. 93, and in same case again in 129 Ill. 166 (29 N. E. Rep. 72-3); Benz v. Hines, 3 Kansas, 390 (89 Am. Dec. 597); and R. R. Co. v. Commissioners, etc., 12 Ill. 136. Besides numerous other cases are cited also the following text writers: Freeman on Judgments (2d Ed.), Sec. 156; Bigelow on Estoppel (2d Ed.), p. 65, and Herman on Estoppel, Sec. 94.

The other proposition, that the determination of the right as between adverse legal claims is not proper in a foreclosure suit, seems to be well supported by the cases of Bozarth v. Landers, 113 Ill. 181, and Gage v. Perry, 93 Ill. 176.

This rule applies where the muniments of title of the adverse claimants respectively describe or include the identical premises in controversy. Here, however, these muniments did not conflict, but plainly described different lands. The mortgage conveyed the southeast quarter of the northeast quarter, etc., which is all that appellee claimed. Appellant claimed only the southwest quarter of the northeast quarter, etc., which is all that Milhous, as assignee of Young, conveyed to Wheelock, under whom he holds. These conveyances on their face lay no foundation for independent and adverse claims to the same premises. By the foreclosure bill the court was not asked, nor did it assume to determine the right as between any such. It did not undertake to decide whether the strip in controversy or any part thereof was in the southeast or the southwest quarter of said northeast quarter, but simply to foreclose the equity of redemption of the mortgagors (and of some others, if any they had) in the southeast quarter. Of that, neither Milhous, as assignee of Young, nor any person claiming under him, could properly complain. The master's deed followed the decree and conveyed by the same description. If the strip in controversy is in fact included in it, the title thereto passed through his grantee to appellee, and there was no adverse claim. If it is not, the title to it did not pass thereby, but is in the owner of the southwest quarter, and there is no adverse claim. Whether it is or is not so included

is not a question of title, primarily, but of boundary; and to be determined by evidence of facts, *dehors* the decree and deeds, namely, of surveys, division fence, actual occupation or the like. And why may not the purchaser of a tract so described, at a sale made under a decree, and upon the other conditions prescribed in the statute, thus show the boundaries in this action, though contested by the owner of adjacent land under a different and independent title? We are not prepared to hold that this would be a contest between independent and adverse claims of title, in the sense of the rule referred to. No such contest appeared in the foreclosure case. Nobody questioned the title of John Moses to the mortgaged premises, nor were any others affected by the decree. The claim of Milhous to the southwest quarter, as assignee of Young, remained in law and fact precisely as before.

Is the fact that, as assignee, he was not made a party to the foreclosure proceeding nor bound by the decree, at all pertinent? Had he been so made and duly served with process, the master's deed, in pursuance of the sale under the decree, would have barred his right to redeem the southeast quarter as a purchaser from Moses subsequent to the mortgage. For that purpose he was a proper party. But was he a necessary party? Did the omission invalidate the decree as to those who were parties and properly before the court? Can it for that reason be impeached in a collateral proceeding by a party who makes no claim to the mortgaged premises or any part thereof or to any other under the mortgagor? The point under consideration concedes, for the purposes of the argument, that the mortgagor was duly served with process and had the title to the mortgaged premises according to their actual boundary, subject to the mortgage; and in that case we hold that the decree was valid and conclusive of the fact that the interests of all the other parties before the court were also subject to that lien, and that the sale and deed of the master thereunder passed that title free and clear from the incumbrance of their claims, though subject to the right of redemption of those premises in Milhous as assignee of the mortgagor.

This action was not commenced until eleven years after the master's deed was due and made, and it is claimed that section fifteen of the statute, limiting the right to sue to five years, applies and bars it. Appellee contends it is not within the terms of that section, and insists that this defense was not relied on or presented on the trial. The record contains no instruction in reference to it, nor any other matter indicating that the question was passed upon. For that reason we do not feel called upon to decide it.

Adverse possession for twenty years was relied upon and evidence offered to prove it. But we declined to consider disputed questions of fact, which may arise again, and reverse the judgment upon the sole ground that plaintiff failed to show a sale of the mortgaged premises, claimed to embrace the strip in controversy, under any valid judgment or decree of any court in this state. Reversed and remanded.