# CHARLESTON

BANK OF UNION v. LOEB.

Submitted March 19, 1912.    Decided December 17, 1912.

1. APPEAL AND ERROR—*Supreme Court of Appeals—Jurisdiction—Amount in Controversy.*

On writ of error to a judgment dismissing a petition filed before a justice pursuant to sections 151 and 152, chapter 50, Code 1906, and heard on appeal in a circuit or intermediate court, the amount actually in controversy, between the petitioner, a subsequent, and the defendant, a prior, attaching creditor of the same debtor, not otherwise appearing, may be shown by affidavit or other proper evidence presented with the petition to this Court. (p. 496).

2. SAME.

The amount actually in controversy upon such petition is the amount which the petitioner will lose if the defendant thereto should prevail in his attachment, which may include principal, interest and costs in the defendant's suit against the common debtor. (p. 496).

3. JUSTICES OF THE PEACE—*Attachment—Subsequent Attaching Creditor—Validity of Prior Attachment—Contest.*

A subsequent attaching creditor has right, by sections 151 and 152, chapter 50, Code 1906, to contest the validity of a prior attachment against the same property. Such right is not limited thereby to an owner claimant or one with title or right of possession. (p. 497).

4. SAME—*Summons—Form.*

The summons of a justice, issued August 19, 1901, returnable August 24, 1901, at 9 o'clock A. M., is not invalid by section 26, chapter 50, Code. Being made returnable on the fifth

day from its date it, by proper construction, conforms to the requirements of that section saying, that such summons shall "be made returnable not less than five  *  *  *  days from its date." (p. 499).

5.  SAME—*Summons—Address to Constable.*

The summons of a justice, otherwise in due form, addressed to "G. T. Grass. To H. C. Smith, or any Constable of said County," the return thereon being signed "G. T. Grass, Special Constable, Kanawha County," sufficiently evidenced an appointment by the justice of such special constable, and such summons and return are not invalid, because the same was not more formally addressed, or the appointment endorsed on the writ, as provided by section 30, chapter 50, Code 1906. (p. 500).

6.  SAME—*Attachment—Affidavit—Statement of Claim—Direction —Indebtedness.*

An affidavit for an attachment, pursuant to section 193, chapter 50, Code 1906, which states the nature of plaintiff's claim to be: "That the claim of the said plaintiff against the defendant is for check not paid, protest fees and To Mdse. that the said claim is just, and this affiant believes that plaintiff ought to recover thereon Sixty 20-100 Dollars, with interest on the same from the......day of...... 189......," is void for indefiniteness in description of plaintiff's claim, and should be quashed on motion, as not being a compliance with the requirements of the statute. (p. 501).

7.  SAME—*Attachment—Void Affidavit—Attack by Subsequent Attaching Creditor.*

The validity of such prior attachment, based on such void affidavit, may be attacked and the affidavit and attachment quashed on motion of a subsequent attaching creditor with a valid attachment on the same property in a proceeding under said sections 151 and 152, chapter 50, Code 1906. (p. 503).

8.  SAME—*Prior Attachment—Attack—Subsequent Attaching Creditor.*

Without such valid attachment, however, a subsequent attaching creditor cannot be heard upon such petition to impeach the validity of a prior attachment, though void on its face. (p. 503).

Appeal from Circuit Court, Kanawha County.

Petition by the Bank of Union, a subsequent attaching creditor, against the Loeb Shoe Company, a prior attaching creditor of the same debtor, to defeat such prior attachment. From a judgment dismissing the petition, petitioner brings error.

*Reversed and Remanded.*

71 W. Va.

*A. M. Prichard, S. S. Green,* and *A. P. Hudson,* for plaintiff in error.

*Leo Loeb,* for defendant in error.

MILLER, JUDGE:

The petition of plaintiff, a subsequent attaching creditor of Watson in the circuit court, filed before a justice, pursuant to sections 151 and 152, chapter 50, Code 1906, against Loeb Shoe Company, a prior attaching creditor, of the same debtor, in an action begun before another justice, was dismissed, and on appeal to the intermediate court it was dismissed there, and the circuit court having denied an appeal from that judgment, the petitioner has brought the case here for review.

The first question is, is the matter in controversy, exclusive of costs, sufficient to give this Cort appellate jurisdiction? According to plaintiff's original and amended petitions the amount for which defendant attached on August 19, 1901, was sixty dollars and twenty cents, with interests and costs. Defendant insists that the jurisdiction must be tested by the original amount in controversy in his suit, exclusive of costs, and that it does not affirmatively appear from the record, as he insists it must to give appellate jurisdiction, that the principal and interest exceeds the sum or value of one hundred dollars. This was not' a suit to recover a specific sum of money, and the general rule in such cases is, that it is not necessary that the record should show the amount in controversy. That may be shown by affidavit or other evidence presented here. *Hannah* v. *Bank,* 53 W. Va. 82. This was properly done, by a certified copy of the final judgment in favor of the defendant in the intermediate court, with taxation of costs, exhibited with plaintiff's petition. This shows judgment $60.20; interest to date of the judgment July 11, 1910, $31.75; costs before the justice, $14.70, total $106.65; to which, if we add, the costs incurred in the intermediate court on appeal, $27.40, the total would be $134.05. If as insisted the costs incurred on appeal by the garnishee can not be included, there still remains the original judgment, interest and costs incurred before the justice amounting to $106.65.

What then is the real amount in controversy? If the Loeb Shoe Company succeeds in maintaining its attachment, as

against petitioner, the fund in bank attached will be depleted by at least the sum of $106.65, and the petitioner deprived of that amount as a credit on its judgment.   So we must say that the actual amount in controversy is that sum which the petitioner will lose if defendant prevails.   If this were a writ of error to the judgment in the case of Loeb Shoe Company against Watson, the contention of counsel 'would have force, but it is not. Though collateral it is to all intent and purposes an independent proceeding, and we think falls within the rule of *Taney* v. *Woodmansee*, 23 W. Va. 709, 713.   In *Castle* v. *Castle*, 69 W. Va. 400, we decided that an appeal would lie to this Court to correct a decree for costs, when such costs had been the subject of a special agreement between the parties.

The next question is, is the petitioner a claimant, with right to contest the validity of the attachment of the Loeb Shoe Company? It is insisted that no one but the owner or one with title, and right of possesson of the property attached, can do this.   This argument is based mainly on said section 151, saying, that upon the filing of the petition and giving the bond, the order of the justice shall direct the officer "having such execution, order of sale, or attachment  *  *  *  to deliver up the property to said claimant," and that this could not mean another attaching creditor.   Opposed to this narrow construction it is insisted for the petitioner, first, that the language of section 151, specifying what the petition shall contain, indicates the intention of the legislature that any one, who has "such a claim to or interest in the property levied on, or about to be sold, as entitles him to have the same released from such levy, or to prevent the sale thereof (as the case may be)" may file such petition, and that this language is comprehensive enough to include a subsequent attaching creditor, with superior right.   Another argument is based on analogy to section 23, chapter 106, Code 1906, relating to proceeding upon attachment in the circuit court.   That section provides that "Any person interested may file his petition at any time before the property attached, as the estate of a defendant, is sold under the decree or judgment, or if the proceeds of the sale have not been paid over to the plaintiff, or his assigns, within one year after such sale, disputing the validity of the plaintiff's attachment thereon, or stating a claim thereto, or an interest

in or lien on the same, under any other attachment or otherwise, and its nature, and upon giving security for costs, the court without any other pleading, shall impanel a jury to inquire into such claim, and if it be found that the petitioner has title to, or lien on, or any interest in such property or its proceeds, the court shall make such order as is necessary to protect his rights; the costs of which inquiry shall be paid by either party, at the discretion of the court." A third point made is based on *McCluny & Co.* v. *Jackson*, 6 Grat. 96, a decision is binding us. That case holds, point 3 of the syllabus, that, "A subsequent attaching creditor may appear to the first attachment, and either in his own name or in the name of the absconding debtor, contest the right of the first attaching creditor to recover." The decision of that case turned on the proper construction of section 12, 1 Rev. Code, 478, providing that "in all cases of attachments, the defendant shall be permitted to make defence, and any other person claiming the property attached, may interplead, without giving bail: Provided, that the property attached shall not thereby be replevied." "This defence," says the judge delivering the opinion in that case, "may be made without a personal appearance; and I can perceive no good reason why a third person claiming a right to have his debt satisfied out of the attached property, should not be permitted to make it, either in the name of the debtor or in his own name. He cannot interplead as a claimant of the property in his own right, because he is seeking to subject it to the payment of his debt as the property of the debtor. Generally speaking, the subsequent attaching creditor is the only person having an interest to controvert the justness of the claim preferred by the first. The debtor is a fugitive, and unless the subsequent creditor is permitted to make defence, a claim which he could shew to be unjust, might consume the whole estate, and the real creditor would be without remedy. Such a construction might lead to gross injustice, and would violate the spirit of the act which authorizes the defendant to make defence without giving bail. The reasons and necessity for extending the privilege to third persons seeking for payment of their debts out of the attached property, are stronger than for permitting third persons to replevy. The plaintiff in the first attachment, cannot object that this defence is made in the name of a creditor who

will be liable for costs, rather than in the name of a fugitive, and generally an insolvent debtor." ∿

The language of said section 151, relating to the delivery of the property to the claimant, constitutes no obstacle to the practical application of section 152 to the case at bar. By proceeding under that section, without bond, the justice is not authorized to turn over the property attached to the claimant; under that section the justice makes no order as to the possession of the property until after the trial of the issue; then he may either "dismiss the claim or order the officer to deliver the property to the claimant, as the right shall appear." And where, as in this case, the property or money is attached in the hands of a garnishee, under section 197, of chapter 50, Code, unless under section 198 the garnishee voluntarily surrenders the property attached to the officer, it remains with him until after the trial of the issue; and if plaintiff obtains judgment, then by proceeding according to sections 205, 206 and 207, he may have judgment against the garnishee for the property or money attached in his hands sufficient to satisfy his judgment as thereby prescribed. We see nothing in the language of section 151 calling for such a narrow construction as counsel would give it. Section 23, chapter 106, gives clear right to plaintiff in the circuit court to intervene and contest the validity of a prior attachment in the circuit court. No stronger reason can be assigned for limiting claimant of the property, under sections 151 and 152, to owner or title claimant, than for so limiting substantially the same language of the Virginia statute involved in *M'Cluny* v. *Jackson supra,* and the answer to the proposition made by the court in that case is applicable here. Indeed the language of our statute, considered in the light of the other sections referred to, presents a stronger case for its application than was presented in that case. We hold, therefore, that under said sections 151 and 152 a subsequent attaching creditor may contest the validity of a prior attachment, as claimant, or as one having right to have the property attached released from the prior attachment.

Being so authorized to intervene, and being properly in this Court, on a writ of error, we reach the next point, namely, is the summons of the justice, issued August 19, 1901, and made returnable August 24, 1901, at 9 o'clock A. M., in the Loeb Shoe

Company Case absolutely void by section 26, of said chapter 50, requiring that such summons "be made returnable not less than five nor more than thirty days from its date?" It is insisted that under this statute the earliest day to which this writ could have been made returnable was August 25; that the statute gives the defendant summoned five full days from the date of the summons to appear, which in this case did not end until midnight of the twenty-fourth, wherefore the summons was absolutely void, and without appearance, gave the justice absolutely no jurisdiction whatsoever. Is this a correct interpretation of the statute? We think not. True the statute says "not less than five    *    *    * days from its date." But five days from August 19, would be August 24. We think that the rule for computing time by excluding the first and including the last day, prescribed by section 12, chapter 13, Code 1906, and the general rule that the law recognizes no fractions in computing time, is applicable. This conclusion is fully supported by decisions from other states construing similar statutes, and by the *obiter,* at least, of *Horner* v. *Huffman,* 52 W. Va. 41, 45-6, 43 S. E. 132; *Smith* v. *Force,* 31 Minn. 119, 16 N. W. 704; *Young* v. *Krueger,* 92 Wis. 361, 66 N. W. 355; *Womack* v. *McAhren,* 9 Ind. 6; *Martin* v. *Reed, Id.* 180; *Blair* v. *Davis, Id.* 236; *Blair* v. *Manson, Id.* 357; *Warner* v, *Bucher,* 24 Kan. 478; *Schultz* v. *American Clock Co.,* 39 *Id.* 334, 18 Pac. 221; *Savings & Loan Society* v. *Thompson,* 32 Cal. 347. True the question is not made a point of the syllabus in our case, but the point was involved, though not necessary, as therein stated, to a decision of the cases. The decisions cited for plaintiff, per *contra,* unless it be *Adkins* v. *Moore,* (S. C.) 20 S. E. 985, seem to us inapplicable. If that case is so interpreted we decline to follow it; it is opposed to the weight of authority and to our interpretation of our own particular statute:

The next point made against the validity of the summons is, that the manner of its direction and of its service, render it void on its face. It is directed as follows: "G. T. Grass. To H. C. Smith, or any Constable of said County." Section 30, of chapter 50, Code 1906, in force at the time, and relied on, provides: "When it shall satisfactorily appear to a justice issuing a summons, attachment or warrant of arrest in a civil action, or a warrant in a criminal proceeding, that a necessity exists therefor, he may appoint a special constable to execute the same, either by

directing such process to such special constable by name as follows: 'To A . . . . . . B . . . . . ., who is hereby appointed a special constable to execute this process', or by endorsing such appointment on said process." No endorsement of the appointment is found on the process. But we see from the name of Grass written in the summons that there was an attempt to comply with the statute. The return on the process is signed "G. T. Grass, Special Constable, Kanawha County." This return was accepted, and no doubt made the basis for the issuance of the second summons, pursuant to said section 202. Though directed in the manner stated we can not hold the process void. Section 17, chapter 50, Code, says: "It may be directed to the constable by name or by his official designation without naming him." It could have been executed by any constable, and the service would have been good; and it might even have been executed by any credible person, and service proven by his affidavit. The question is one relating to the proper execution of the power of appointment of the special officer, rather than to the validity of the writ. The writ is good, clearly. The writ with the return and acceptance of the return, clearly evidences an appointment. The writ and return we think sufficient to confer jurisdiction. *Town of Point Pleasant* v. *Greenlee,* 63 W. Va. 207; Alderson on Jud. Writs and Process. §§ 98 and 198. In section 98, at page 170, this writer says: "A writ may be directed to a person as 'special constable,' and the written appointment need not show the statutory facts on which the appointment was made; as that the justice was requested to make the appointment, or he was satisfied it was expedient to do so." See *Cowdery* v. *Johnson,* (Vt.) 15 Atl. 188. Our statute, section 30, chapter 50, authorizes such appointment, where it appears to the justice "that a necessity exists therefor." We hold that the irregularity of appointment does not vitiate the writ or return. The fact of appointment sufficiently appears, and we hold that the irregularity does not vitiate the writ. Our case does not fall within the strict rule of the Illinois cases of *Illinois Land & Loan Co.* v. *McCormick,* 61 Ill. 322; *Filkins* v. *O'Sullivan,* 79 Ill. 524; *Noleman* v. *Weil,* 72 Ill. 502, and *Davis* v. *Hamilton,* 53 Ill. App. 94.

The next question is, is the Loeb Shoe Company's affidavit so defective as to render its attachment absolutely void, or merely

voidable? If void it may be collaterally attacked, and will con﹅ stitute no protection, even to the Charleston National Bank, garnishee. The defect pointed out, which it is claimed renders the attachment based thereon void, is that it fails to show the nature of plaintiff's claim as required by section 193, chapter 50, Code 1906. The affidavit says: "That the claim of the said plaintiff against the defendant is for check not paid, protest fees and To Mdse. that the said claim is just, and this affiant believes that plaintiff ought to recover thereon Sixty 20-100 Dollars, with interest on the same from the ...... day of ........ 189....." Is this sufficient? It is argued that it shows no right of recovery from anybody, and none from defendant Watson; that it does not show whose check it was, or to whom given, or the date or amount thereof; nor does the affidavit show what the rest of the claim is, nor by what right plaintiff claims to recover on account of either check or other claim, as against defendant Watson; in other words, that no cause of action whatsoever is stated, against either Watson or any one else, and that this indefiniteness ought to quash the affidavit upon the principle laid down in *Sommers* v. *Allen,* 44 W. Va. 120, 28 S. E. 787. The affidavit held bad in that case, and quashing the attachment for indefinite description of plaintiff's claim, stated that the suit was to recover three hundred and ninety-six dollars "which sum will be due and payable on said 1st day of February, 1896, which sum the plaintiffs claim will be due on that day on a negotiable note signed by J. H. Allen and Kate M. Allen." It was there held, point 2 of the syllabus, that, "An affidavit for an attachment not stating the nature of the plaintiff's demand, so as to show a title or right in the plaintiff to such demand, is bad, and should be quashed on motion." Certainly the case here falls within that rule. The rule of that case, and cases cited, which originated in the circuit court, was applied in an attachment proceeding originating like this one in a justice's court, in *Kesler* v. *Lapham,* 46 W. Va. 293, 297-8. Other cases in this Court giving some color to defendant's contention are *Todd & Smith* v. *Gates,* 20 W. Va. 464, and *Lively* v. *Loan Ass'n.,* 46 W. Va. 180. But the cases cited for our conclusion, particularly *Sommers* v. *Allen,* are apt and on all fours with this case. The other cases must be differentiated and reconciled with these because of the difference in

the character of the claims sued on, and the necessity in cases like this and the *Sommers Case,* for reasons stated in the latter, for more definiteness in the statement of the nature of the claims, than in those cases relied on by defendant. We think the nature of the claim ought to be so stated, not necessarily with formality, but with sufficient definiteness to show that the plaintiff has a cause of action against defendant. The nature of an attachment proceeding would seem to require this. We can not ignore all essentials even in a justice's court. Chapter 50 of the Code, while not requiring formality, clearly calls for the substance. A reading of the sections relating to pleadings clearly evince this, and if in pleadings, certainly in the harsher remedy of attachment substance is demanded in the affidavit. Judge HOLT in *Crim* v. *Harmon,* 38 W. Va. 596, gives some strong reasons for such a rule.

Now, may the validity of that attachment be assailed collaterally, as attempted in this case, or by a proceeding under sections 151 and 152 of chapter 50, Code? We hold that a subsequent attaching creditor may do so; that any creditor with title to or lien upon the property attached may do so. *Miller* v. *White,* 46 W. Va. 67; *U. S. Baking Co.* v. *Bachman,* 38 W. Va. 84, 3rd syl.; *Pendleton* v. *Smith,* 1 W. Va. 16. Independently of the statute where the attachment proceeding is purely *ex parte,* as in this case, the defendant not being personally served with process and not appearing to the action, the attachment may be collaterally impeached for jurisdictional defects in the affidavit, and unless the affidavit be lawfully sufficient to support the jurisdiction to pronounce judgment thereon it is void. Failure to state the nature of plaintiff's claim, as required, is not, as we hold, a mere irregularity; it goes to the very life of the writ, rendering it void and quashable. Drake on Attachment (6th ed.), § 87a to § 89b, both inclusive. See on the subject of stating the nature of plaintiff's claim, and supporting our cases cited, Van Fleet on Collateral Attack, § 263.

But the petitioner, a subsequent attaching creditor, claiming right to attack the prior attachment of defendant, must of course himself show a valid attachment. Without this he can have no standing in court. 4 Cyc. 646. A *prima facie* case is made, according to the authorities, by showing valid process and war-

rant of attachment and a sufficient affidavit. 4 Cyc. 646, and cases cited in notes. This rule seems to be contemplated by our statutes, especially section 23, chapter 106, Code 1906. Has petitioner alleged and proven a case entitling it to attack defendant's attachment? If not it should be denied any relief. Defendant insists it has not done so; that its affidavit is defective in the same particular in which his affidavit has been held bad, failure to state a good cause of action against Watson. The affidavit states the nature of petitioner's claim to be: "That the said Watson on or about the 10th day of August, 1901, delivered to the said Bank a certain check order or draft for the sum of Fifteen Hundred pounds sterling of the Current money of the Kingdom of Great Britain; that said check, order or draft was at the request of said Watson forwarded for Collection through said Bank's correspondent in the City of New York, State of New York; that said Bank of Union was informed by its said correspondent that the proceeds of said check order or draft amounted to the sum of Seven Thousand Two Hundred and Seventy Eight and 75-100 Dollars which had been placed to the credit of the said Bank of Union; that thereupon said Watson gave sundry checks or orders on said Bank, many of which the said Bank paid on the faith of said information so received from its said correspondent in New York; but the said check order or draft so forwarded for collection as aforesaid was not paid when it was duly presented for payment, and the balance now due the said Bank of Union from said Watson by reason of said transaction amounts at least to the sum of Six Thousand Dollars." The contention of defendant is that as the affidavit admits that petitioner received credit in the New York bank, for the full proceeds of the draft, this was the equivalent of payment to it of the draft, and that as there is no allegation or evidence of protest, it must be assumed there was none, so as to bind petitioner, or authorize the New York bank to charge back the draft or render it liable for the proceeds thereof. It is quite true that to render the indorser of a note or bill liable it must be duly protested for non payment, as the authorities cited by defendant's counsel hold; but we are of opinion that the omission to allege that the draft was duly protested is substantially covered by the averment that the draft was not paid when duly presented, and that the balance then due petitioner

from Watson by reason of said transaction amounts to at least the sum sued for. We think the averment sufficient to let in proof in the trial of liability by notice of protest, or protest waived, as it may have been, or liability incurred, as it may have been, by some other kind of waiver, or liability by special contract by petitioner with its New York correspondent. It is unnecessary to set out in detail the evidential facts. We think this affidavit a substantial compliance with our statute, and the authorities on the subject. See 4 Cyc. 490, and decisions and precedents cited in notes.

The judgment complained of simply dismissed plaintiff's petition, on motion of defendant. The case was not allowed to come to trial on its merits. For the reasons given we think there is error in that judgment and that it must be reversed, and the case remanded to be further proceeded in according to the principles enunciated herein and further according to the rules and principles of law governing the trial of like cases, and we will so order.

*Reversed and Remanded.*

POFFENBARGER, JUDGE, *(dissenting)*:

I am compelled to dissent from the views of the majority of the Court upon the only proposition upon which the decision is fatal to the right of the defendant in error, namely, the insufficiency of the affidavit respecting the nature of the demand. Our decisions are not uniform as to the character of the statement required by the statute. *Kesler* v. *Lapham,* 46 W. Va. 293, requires a statement showing all the essential elements of a right of recovery, not merely an indication of the nature of the claim. It is the only case that does require so much detail and certainty in an affidavit for an attachment in a justice's court, and it fails to overrule others clearly inconsistent with it. *Lively* v. *Loan Association,* 46 W. Va. 181, applies a more liberal rule. In the former case the action was for the amount due on certain loan association stock, standing on the books of the association in the name of a person other than the plaintiff, or at least originally issued to such other person. The affidavit did not expressly state any assignment thereof. It showed only that the plaintiff was suing as an assignee. Nevertheless the court held it sufficient. In *Todd and Smith* v. *Gates,* 20 W. Va. 464, the affidavit

stated the demand to be "for transcript of foreign judgment."
There was no specification as to the judgment or the parties there-
to or the court in which it had been rendered, but it was upheld as
conforming substantially to the requirements of the statute.   The
opinion in that case was written by Judge SNYDER, who cited in
support of his position *McCluny* v. *Jackson,* 6 Grat. 96, fully sus-
taining it.   In many jurisdictions, the pleadings may be looked
to for a statement of the nature of the demand and there seems to
be no good reason for requiring the entire case to be unfolded in
the affidavit in duplication of the pleadings.   To a limited ex-
tent the attachment is separate from the main suit, but it is de-
pendent upon it and related and attached to it.   It is a subsid-
iary branch of the main cause.   However it may be in common
law actions, in which the parties are always represented by at-
torneys learned in the law, there is reason for the liberality of
procedure approved in *Todd and Smith* v. *Gates* and *Lively* v.
*Loan Association,* in justice's courts in which the parties them-
selves may conduct their proceedings personally or by agents.
There the amounts in controversy are small and the time
intervening between seizure and trial short, wherefore no
great hardship can result from the seizure of property
under attachment in advance of adjudication.   Process is
generally returnable in a very few days.   In the circuit
court, property may remain in the hands of the officer
for a considerable time before there is an opportunity
to test the grounds of the attachment.   The terms of
the statute do not indicate intent to require full statement of a
cause of action.   It requires only a statement of the nature of the
claim.   Description of the claim, as one for an account for mer-
chandise or services or the amount due on a note or a check, in-
dicates in a general way its nature and brings the affidavit with-
in the terms of the statute.   Anything additional must be found
elsewhere than in the legislative language.   It is added by the
court upon the assumption of some common law or other require-
ment which the legislature is deemed to have intended to adopt by
implication.   As the attachment is purely a statutory proceed-
ing, unknown to the common law, the assumption or presump-
tion of such legislative intent seems to have little or nothing to
stand upon.

For these reasons, I would affirm the judgment of the court below.